# EXHIBIT "A"

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF YORK | ) | |
| | ) | |
| Boggs Paving, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **SUMMONS** |
| v. | ) | (Jury Trial Demanded) |
| | ) | |
| Liberty Mutual Fire Insurance | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**TO:    THE DEFENDANTS, ABOVE-NAMED**

      **YOU ARE HEREBY SUMMONED AND REQUIRED** to answer the Complaint in this

action, a copy of which is hereby served upon you, and to serve a copy of your Answer to said

Complaint upon the undersigned subscriber at his offices at 1735 St. Julian Place, Suite 200,

Columbia, South Carolina 29204, within thirty (30) days after service upon you, exclusive of the

day of such service; and if you fail to answer the Complaint within the time aforesaid, judgment

by default will be rendered against you for the relief demanded in the Complaint.


        /S/ Henry P. Wall_____

        Henry P. Wall, Esquire, S.C. Bar # 5797

        hwall@brunerpowell.com

        Benjamin C. Bruner, Esquire, S.C. Bar # 77544

        bbruner@brunerpowell.com

        BRUNER POWELL WALL & MULLINS, LLC

        P. O. Box 61110

        Columbia, SC 29260

        (803) 252-7693

        *Attorneys for the Plaintiff*

December 28, 2018
Columbia, South Carolina

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

STATE OF SOUTH CAROLINA

COUNTY OF YORK

Boggs Paving, Inc.

Plaintiff,

v.

Liberty Mutual Fire Insurance Company

Defendant.

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiff, Boggs Paving, Inc. ("Boggs"), complaining of the Defendant, Liberty Mutual Fire Insurance Company (collectively "Liberty"), would show:

## PARTIES AND JURISDICTION

1.      Boggs is a North Carolina corporation with its principal place of business in Monroe, North Carolina, engaged in the business of highway-heavy construction, including asphalt paving.

2.      Liberty a Massachusetts Corporation engaged in the business of providing, among other things, policies of commercial liability insurance and is registered and authorized to provide such insurance in South Carolina.

3.      Heretofore Liberty provided Boggs with a Commercial General Liability Insurance Policy, a true copy of which is attached hereto at Exhibit A, in exchange for a policy premium in excess of $180,000.00.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

4.     Pursuant to the terms and conditions of Exhibit A, Liberty agreed and promised to defend, indemnify and pay such sums as Boggs, the insured, became legally obligated to pay for property damages covered within the terms and conditions of Exhibit A.

5.     On or about December 11, 2014, an occurrence under the Insurance Policy resulted in property damages to various landowners in York County, South Carolina, for which Boggs was in fact liable and for which Liberty had provided insurance coverage. As a consequence of the occurrence, two separate lawsuits were filed against Boggs, the Hoover Suit (Exhibit B) and the Perry Suit (Exhibit C).

6.     Boggs fully discharged its duties concerning the reporting of the claims and potential loss to Liberty in accordance with the Policy of Insurance.

7.     Liberty initially assumed responsibility for the defense of Boggs and defended the Hoover and Perry suits. Liberty further waived all policy defenses through its course of conduct and assured Boggs that it was in fact covered for the damages alleged in the two suits. Boggs fully cooperated with Liberty in good faith in the defense of the two suits. Liberty, however, did not cooperate with Boggs in good faith and in fact developed an undisclosed and surreptitious determination to deny coverage for the claims. As the claims proceeded to mediation, Liberty refused to pay and honor the terms and conditions of the policy of insurance and repudiated its obligations to its insured. As a consequence of Liberty's conduct and refusal to pay, Boggs reasonably settled both claims without the benefit of the insurance for which it had previously paid a fair premium, and Boggs incurred damages in excess of $125,000.00 for which Liberty is liable.

8.     This Court has venue and jurisdiction over this matter.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

## FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

9.    Plaintiff repeats and realleges the allegations contained in the above paragraphs as if more fully set forth herein.

10.    Liberty has breached the obligations of its contract of insurance with Boggs by failing to honor the terms and conditions of the policy. In particular, Liberty has breached its obligations by:

a.  Failed to properly pay or reimburse Boggs for the losses covered under the policy of insurance,

b.  Failed to properly notify and inform Boggs of its intentions concerning the policy of insurance,

c.  Failed to cooperate in good faith during the mediation process,

d.  Failed to contribute to the mediated settlements, and,

e.  Failed to act in accordance with the dictates of good faith and fair dealing.

11.    As a direct and proximate result of these breaches, Boggs has been damaged in an amount in excess of $125,000, for which Liberty is liable.

## FOR A SECOND CAUSE OF ACTION
### (Bad Faith)

12.    Plaintiff repeats and realleges the allegations contained in the above paragraphs as if more fully set forth herein.

13.    Liberty elevated its interests over the interests of its insured and refused to properly evaluate and settle legitimate claims for which there was adequate insurance coverage within the policy limits, to the sole detriment of its insured. Liberty further acted with deceit, malice and with callous and reckless indifference to the interests of its insured thereby causing harm to its insured

in bad faith and contrary to the dictates of good faith and fair dealing and its duties to honestly and fairly adjust and settle claims for which Boggs had procured first party insurance.

14.     As a consequence of the foregoing Boggs has been damaged in an amount in excess of $125,000, and Liberty is liable for such damages to Boggs and, in addition thereto, Liberty is liable to Boggs for punitive damages in an amount to be proven at trial together with attorney's fees and the costs of this action.

**FOR A THIRD CAUSE OF ACTION**
**(Unfair and Deceptive Trade Practices)**

15.     Plaintiff repeats and realleges the allegations contained in the above paragraphs as if more fully set forth herein.

16.     Liberty's conduct constitutes Unfair and Deceptive Trade Practices in violation of S. C. Code §39-5-20 and Liberty willfully violated its obligations and duties.

17.     Liberty's actions are capable of repetition, and as a consequence of the unfair and deceptive trade practices, Boggs has been damaged in an amount in excess of $125,000 for which Liberty is liable together with treble damages and attorney's fees under the provisions of the South Carolina Unfair Trade Practices Act.

**WHEREFORE,** Plaintiff prays this Honorable Court inquire into the matters set forth herein and for a trial by jury and the award judgment in favor of the Plaintiff against the Defendant for actual, consequential, incidental, special, punitive, treble and other damages in an amount to be shown at trial, as well as attorney's fees and costs as provided by law, and for other and further relief as is deemed just and proper.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

/S/ Henry P. Wall_____
Henry P. Wall, Esquire, S.C. Bar # 5797
hwall@brunerpowell.com
Benjamin C. Bruner, Esquire, S.C. Bar # 77544
bbruner@brunerpowell.com
BRUNER POWELL WALL & MULLINS, LLC
P. O. Box 61110
Columbia, SC 29260
(803) 252-7693
*Attorneys for the Plaintiff*

Columbia, South Carolina
December 28, 2018

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400002

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

## ANNUAL MEETING NOTICE

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

## PARTICIPATING PROVISION

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary.

**SECRETARY**

**PRESIDENT**

LIL 90 04 06 13          © 2013 Liberty Mutual Insurance. All rights reserved.          Page 1 of 1

Boggs 003396

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400003

## COMMERCIAL GENERAL LIABILITY DECLARATIONS
### OCCURRENCE

 **Liberty Mutual.** INSURANCE

Issued By Liberty Mutual Fire Insurance Co.

| | |
|---|---|
| Policy Number  TB2-Z51-283815-014 | Issuing Office  BOSTON, MA |
| Renewal Of    TB2-Z51-283815-013 | Issue Date    2014-05-12 |
| Account Number  5-283815 | Sub Account  0003 |

Named Insured and Mailing Address
Boggs Paving, Inc.
P.O. Box 1609
Monroe NC 28111-1609

Franchise    9004

Form of Business: Corporation

Policy Period: The policy period is from 05/01/2014 to 05/01/2015 12:01 A.M. standard time at the Insured's mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Premises Rented to You Limit | $ | 300,000  Any one premises |
| Medical Expense Limit | $ | 10,000  Any one person |
| Personal & Advertising Injury Limit | $ | 1,000,000 |
| General Aggregate Limit | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000 |

### SCHEDULE

The declarations are completed on the accompanying "Declarations Extension Schedule(s)".

| | | |
|---|---|---|
| Commercial General Liability Coverage Part Premium | $ | 188,544 |
| Total Estimated Premium | $ | 188,544 |
| Other Charge(s) | $ | |

Policywriting Minimum Premium  $  1,000

Forms Applicable: See Attached Inventory

JAMES A 0073005102
JAMES A SCOTT & SON INC
6135 PARK SOUTH DRIVE STE 100

CHARLOTTE NC 28210

Boggs 003397

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP46003937

136201400023400004

**DECLARATIONS EXTENSION SCHEDULE – CLASSIFICATION DESCRIPTIONS**

Policy Number  TB2-Z51-283815-014

| Class Code | Description |
|------------|-------------|
| 15250 | Contracting (Medium) |

LCS 00 01 05 12          © 2012 Liberty Mutual Insurance. All rights reserved.          Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc. with
its permission.

Boggs 003398

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400005

## DECLARATIONS EXTENSION SCHEDULE
## -- COMPOSITE RATED COVERAGES --

Policy Number  TB2-Z51-283815-014

| Description | Premium Basis | | Rates | | Premium |
|---|---|---|---|---|---|
| All Operations of the Named Insured<br>- Asphalt Sales | Gross Sales | 2,145,000 | Per 1000 | 4.4000 | $9,438 |
| All Operations of the Named Insured<br>- GL Payroll | Payroll | 8,071,500 | Per 1000 | 22.1900 | $179,106 |
| **TOTAL** | | | | | $188,544 |

LCS 00 02 05 12          © 2012 Liberty Mutual Insurance. All rights reserved.          Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc. with
its permission.

Boggs 003399

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400006

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

## Inventory
## Coverage Forms/Parts, Endorsements, Enclosures

COVERAGE FORMS/PARTS, ENDORSEMENTS AND ENCLOSURES FORMING A PART OF THIS POLICY AT INCEPTION:

Form Number/Edition Date     Title

**COMMON POLICY FORMS**

| Form Number/Edition Date | Title |
|---|---|
| LIL 90 04 06 13 | ANNUAL MEETING NOTICE |
| LC 00 04 08 12 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| LCS 00 01 05 12 | DECLARATIONS EXTENSION SCHEDULE - CLASSIFICATION DESCRIPTIONS |
| LCS 00 02 05 12 | DECLARATIONS EXTENSION SCHEDULE |
| IC 00 42 07 09 | Inventory Coverage Forms/Parts, Endorsements, Enclosures |
| IL 00 17 11 98 | Common Policy Conditions |
| IL 02 69 09 08 | North Carolina Changes - Cancellation And Nonrenewal |

**COMMERCIAL GENERAL LIABILITY**

| | |
|---|---|
| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |

Named Insured

| | |
|---|---|
| LC 99 31 02 13 | Broad Form Named Insured Endorsement |
| LIS 90 01 11 12 | Named Insured Extension Schedule |

Deductible

| | |
|---|---|
| CG 03 00 01 96 | Deductible Liability Insurance |

Composite Rate

| | |
|---|---|
| LC 99 12 10 13 | Composite Rate Endorsement |

Coverage Endorsement(s)

| | |
|---|---|
| CG 04 35 12 07 | Employee Benefits Liability Coverage |
| CG 24 04 05 09 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| CG 24 26 04 13 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| LC 04 04 06 05 | Bodily Injury to Co-Employees Coverage |
| LC 25 13 08 08 | Non-Cumulation of Liability (Same Occurrence) |
| LC 29 04 08 08 | Personal and Advertising Injury – Definition of Publication |
| LC 29 06 08 08 | Personal and Advertising Injury – Occurrence Redefined |
| LC 99 36 02 13 | PREMIUM RESPONSIBILITY ENDORSEMENT |
| LC 29 08 10 11 | Advertisement Redefined |

IC 00 42 07 09          © 2008, Liberty Mutual Group of Companies.  All rights reserved.          Page 1 of 3

Boggs 003400

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400007

| Form Number/Edition Date | Title |
|---|---|
| LG 32 05 06 05 | Damage First Occurring Prior to Policy Period - Exclusion |
| LD 04 10 06 11 | Time Element Pollution Liability Coverage |
| LIM 99 01 05 11 | Notice of Cancellation to Third Parties |
| LC 04 43 05 12 | Commercial General Liability Enhancement for Contractors |
| LC 25 19 10 13 | Per Project and Per Location Combined Aggregate Limits-With Optional Capped Limits Endorsement |

**Additional Insured(s)**

| | |
|---|---|
| CG 20 33 04 13 | ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU |

**TRIA Exclusion(s)**

| | |
|---|---|
| CG 21 73 01 08 | Exclusion of Certified Acts of Terrorism |
| CG 21 87 01 07 | CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT) |
| CG 26 88 01 08 | Alaska Exclusion of Certified Acts of Terrorism |
| CG 32 14 01 07 | ALASKA CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT) |
| CG 32 20 01 07 | WASHINGTON CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT) |

**Other Exclusion(s)**

| | |
|---|---|
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 54 01 96 | Exclusion - Designated Operations Covered By A Consolidated (Wrap-Up) Insurance Program |
| CG 21 55 09 99 | Total Pollution Exclusion With A Hostile Fire Exception |
| CG 21 67 12 04 | Fungi or Bacteria Exclusion |
| CG 22 80 04 13 | LIMITED EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| LC 21 01 06 05 | Asbestos Exclusion Endorsement |
| LC 21 02 06 05 | Silica Exclusion Endorsement |
| LC 21 04 06 05 | Discrimination Exclusion |
| LC 21 06 06 07 | Lead Exclusion |
| LC 21 39 06 07 | Radioactive Matter Exclusion |
| LC 24 10 10 11 | Contractual Liability Exclusion Amended |

**State Mandatory**

| | |
|---|---|
| ST 20 00 03 87 | Important Notice to Policyholders |

**NOTICE(S) TO POLICYHOLDER**

| | |
|---|---|
| CNI 90 07 01 14 | IMPORTANT NOTICE REGARDING THE EXPIRATION OF THE TERRORISM RISK INSURANCE ACT AND THE REDUCTION IN COVERAGE FOR TERRORISM LOSSES |

IC 00 42 07 09        © 2008, Liberty Mutual Group of Companies. All rights reserved.        Page 2 of 3

Boggs 003401

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400008

| Form Number/Edition Date | Title |
| --- | --- |
| EN 90 48 07 09 | Disclosure - Terrorism Risk Insurance Act |
| LG 32 06 11 05 | Premium Determination - Subcontractors |
| SNI 90 01 05 12 | POLICYHOLDER NOTICE - COMPANY CONTACT INFORMATION |
| SNL 90 04 10 13 | LIBERALIZATION NOTICE |

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Boggs 003402

136201400023400009

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

# Common Policy Conditions

All Coverage Parts included in this policy are subject to the following conditions:

## A. CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

Copyright, Insurance Services Office, Inc., 1998

IL 00 17 11 98
11-98

Page 1 of 2

Boggs 003403

136201400023400010

b.   Comply with laws, regulations, codes or standards.

3.   Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4.   Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E.   PREMIUMS

The first Named Insured shown in the Declarations:

1.   Is responsible for the payment of all premiums; and

2.   Will be the payee for any return premiums we pay.

## F.   TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Boggs 003404

136201400023400011

IL 02 69 09 08

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. Cancellation Requirements

a. Policies In Effect Less Than 60 Days

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. Policies In Effect More Than 60 Days

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

(1) Expiration of the policy term; or

(2) Anniversary date,

stated in the policy only for one or more of the following reasons:

(a) Nonpayment of premium;

(b) An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

(c) Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

(d) Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

(e) A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

(f) Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

© ISO Properties, Inc., 2007

Boggs 003405

1362014000234000012

(g) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

(h) Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

(i) A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

(j) You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

(I) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(II) 30 days before the effective date of cancellation if we cancel for any other reason.

c. Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

d. We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

B. The following provisions are added and supersede any other provisions to the contrary:

1. Nonrenewal

a. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

(1) Expiration of the policy if this policy has been written for one year or less; or

(2) Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

b. We need not mail or deliver the notice of nonrenewal if you have:

(1) Insured property covered under this policy, under any other insurance policy;

(2) Accepted replacement coverage; or

(3) Requested or agreed to nonrenewal of this policy.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. The written notice of cancellation or nonrenewal will:

a. Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

b. State the reason or reasons for cancellation or nonrenewal.

© ISO Properties, Inc., 2007

IL 02 69 09 08

Boggs 003406

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury",

© Insurance Services Office, Inc., 2012

Boggs 003407

136201400023400014

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Boggs 003408

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

CG 00 01 04 13    © Insurance Services Office, Inc., 2012    Page 3 of 16

Boggs 003409

136201400023400016

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

© Insurance Services Office, Inc., 2012

Boggs 003410

136201400023400017

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP46033937

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

p. Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. Recording And Distribution Of Material Or Information In Violation Of Law

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

© Insurance Services Office, Inc., 2012

Boggs 003411

136201400023400018

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Boggs 003412

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

136201400023400020

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Boggs 003414

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I — Coverage A — Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II — WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   (1) "Bodily injury" or "personal and advertising injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by;

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Boggs 003416

136201400023400023

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Boggs 003417

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner:

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner: or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance: and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete:

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Boggs 003418

136201400023400025

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP460393937

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

      (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Boggs 003419

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

Boggs 003420

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Boggs 003422

1362014000234000029

Policy Number  TB2-Z51-283815-014
Issued by      LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BROAD FORM NAMED INSURED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The term Named Insured includes in addition to the person or organization designated in the Declarations as the first Named Insured:

   1. Boggs Paving, Inc.

      but only while the first Named Insured directly or indirectly owns, during the policy period, an interest therein of 50% or more; and

   2. any other organization (except for a partnership or joint venture) incorporated or organized under the laws of the United States of America or its states, territories or possessions; Puerto Rico; or Canada or its provinces, but only while the first Named Insured or any of the Named Insureds in Paragraph A.1. above directly or indirectly owns, during the policy period, an interest therein of 50% or more.  But:

   None of the above-designated persons or organizations is a Named Insured with respect to:

     (1) "bodily injury" or "property damage" that occurred, or

     (2) "personal and advertising injury" caused by an offense or a series of related offenses committed

   prior to the ownership interests described in Paragraph A.1. or A.2. above.

B. Paragraph 3. of Section II – Who Is An Insured is deleted.

C. The final paragraph of Section II – Who Is An Insured is replaced by the following:

   A partnership or joint venture is not a Named Insured unless it is shown in the Declarations or in Paragraph A.1. of this endorsement.  No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations or in Paragraph A.1. of this endorsement or for any limited liability company that is not a Named Insured.

D. The first Named Insured is authorized to act and agrees to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

LC 99 31 02 13            © 2013 Liberty Mutual Insurance.  All rights reserved.            Page 1 of 1
                   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003423

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400031

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number: TB2-Z51-283815-014
Issued by:   Liberty Mutual Fire Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED INSURED EXTENSION SCHEDULE**

This schedule applies to the following coverage parts:

Commercial General Liability

It is agreed that, in addition to the person or organization named in Item 1 of the Declarations, the following also qualify as a Named Insured under this policy:


Boggs Group
Boggs Materials, Inc.
Boggs Properties, LLC
Boggs Transport, Inc.
Contractors Management Services, LLC
Boggs HMA, LLC
Construction Materials Group, LLC
Boggs Vaugh Contracting, Inc.
Construction Financial Services, LLC
Bova Corporation

LIS 90 01 11 12              © 2012 Liberty Mutual Insurance. All rights reserved.              Page 1 of 1

Boggs 003424

1362014000234000032

POLICY NUMBER: TB2-Z51-283815-014

COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
| --- | --- | --- | --- |
|  | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $ | | $ |
| OR | | | |
| Bodily Injury Liability and/or | $ | | $       2,500 |
| Property Damage Liability Combined | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

  a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

  (1) "Bodily injury";

  (2) "Property damage"; or

  (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

CG 03 00 01 96

Copyright, Insurance Services Office, Inc., 1994

Page 1 of 2

Boggs 003425

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400033

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

     (1) "Bodily injury";

     (2) "Property damage"; or

     (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96

Boggs 003426

136201400023400034

Policy Number  TB2-Z51-283815-014
Issued by      LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMPOSITE RATE**

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

With regard to composite rated premium for this policy, exposure types are defined as:

**Admissions:** means the total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

**Area/Square Feet:** means area, as measured in square feet, of all property you own, lease or rent, including land held for investment, during the policy period.

**Cost/Total Cost:** means the total cost of all work let or sublet in connection with each specific project including (1) the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; and (2) all fees, bonuses or commissions made, paid or due.

**Gross Receipts:** means the total amount earned by the insured for transporting passengers, mail and merchandise.

**Gross Sales (Including Foreign):** means the gross amount charged by you, your concessionaires or by others trading under your name for all goods or products sold or distributed during the policy period, operations performed during the policy period and rentals both in the United States of America, its territories and possessions and outside the United States of America, its territories and possessions.  Sales includes taxes, foreign exchange discounts, freight allowance to customers, total sales of consigned goods and warehouse receipts, trade or cash discounts, bad debts, and repossessions of items sold on installments.

**Gross Sales (Excluding Foreign):** means the gross amount charged by you, your concessionaires or by others trading under your name for all goods or products sold or distributed during the policy period, operations performed during the policy period and rentals only in the United States of America, its territories and possessions, and Puerto Rico.  Sales includes taxes, foreign exchange discounts, freight allowance to customers, total sales of consigned goods and warehouse receipts, trade or cash discounts, bad debts, and repossessions of items sold on installments.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Boggs 003427

136201400023400035

**Operating Expenditures:** means total expenditures (including grants, entitlements and shared revenue) without regard to source of revenue during the policy period, including accounts payable subject to inclusions, exclusions and terminology in accordance with the General Liability manual in use by the Company.

**Workers Compensation Payroll:** means all payments by you in money, or in substitutes for money during the policy period to all executive officers and other employees for services rendered, subject to any over-time earnings, limitation of remuneration or exception rules applicable in accordance with the Workers Compensation manual in use by the Company.

**General Liability Payroll:** means all payments by you in money, or in substitutes for money, during the policy period to all executive officers and other employees for services rendered, subject to any over-time earnings, limitation of remuneration or exception rules applicable in accordance with the General Liability manual in use by the Company.

**Units:** means a single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

**Other:** means * General Liability Payroll

　　　　　**Asphalt Sales.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 2

Boggs 003428

136201400023400036

POLICY NUMBER: TB2-Z51-283815-014

COMMERCIAL GENERAL LIABILITY
CG 04 35 12 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Coverage | Limit Of Insurance | | Each Employee Deductible |
|---|---|---|---|
| Employee Benefits Programs | $  1,000,000 | each employee | Not Applicable |
| | $  1,000,000 | aggregate | |
| Retroactive Date: | 05/01/2004 | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

A. The following is added to **Section I – Coverages**:

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Paragraph **D.** (Section III – Limits Of Insurance); and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to damages only if:

      (1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

      (2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

      (3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

   c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

CG 04 35 12 07

© ISO Properties, Inc., 2006

Page 1 of 6
Boggs 003429

136201400023400037

(2) When we make settlement in accordance with Paragraph a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. **Exclusions**

This insurance does not apply to:

a. **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c. **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

d. **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f. **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j. **Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments - Coverages A and B are replaced by Supplementary Payments - Coverages A, B and Employee Benefits Liability.

2. Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 3. of Section II - Who Is An Insured are replaced by the following:

2. Each of the following is also an insured:

a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

b. Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

© ISO Properties, Inc., 2006

CG 04 35 12 07

Boggs 003430

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400038

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Section III – Limits Of Insurance is replaced by the following:

1. Limits Of Insurance

a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

(1) Insureds;

(2) "Claims" made or "suits" brought;

(3) Persons or organizations making "claims" or bringing "suits";

(4) Acts, errors or omissions; or

(5) Benefits included in your "employee benefit program".

b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

(1) An act, error or omission; or

(2) A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2. Deductible

a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

c. The terms of this insurance, including those with respect to:

(1) Our right and duty to defend any "suits" seeking those damages; and

(2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

E. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV - Commercial General Liability Conditions are replaced by the following:

2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

Boggs 003431

136201400023400039

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. Excess Insurance

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Schedule of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

© ISO Properties, Inc., 2006

Boggs 003432

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400040

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

F. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The "employee benefit programs" insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this endorsement for future payment of damages; and

   d. Other related factors.

   The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

   The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

   Paragraph D.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph D.1.c.

G. For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

136201400023400041

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

      a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

© ISO Properties, Inc., 2006

CG 04 35 12 07
Boggs 003454

136201400023400042

POLICY NUMBER: TB2-Z51-283815-014

COMMERCIAL GENERAL LIABILITY
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to Paragraph 8. Transfer Of Rights Of Recovery Against Others To Us of Section IV – Conditions:

We waive any right of recovery we may have against the person or organization shown in the Schedule below because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule below.

SCHEDULE

Name Of Person Or Organization:

As required by written contract or agreement entered into prior to loss

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Boggs 003435

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400043

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the Definitions section is replaced by the following:

"Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

Boggs 003436

136201400023400044

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Bodily Injury to Co-Employees Coverage

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE FORM

1.  The following is added to Paragraph 2. of the WHO IS AN INSURED section:

    Your "employees" (other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company)) or "volunteer workers" are insureds while in the course of their employment or performing duties related to the conduct of your business with respect to "bodily injury":

    (a)  to you;

    (b)  to your partners or members (if partnership or joint venture);

    (c)  to your members (if you are a limited liability company); or

    (d)  to a co-"employee" or "volunteer worker" while that co-"employee" or "volunteer worker" is either in the course of his or her employment by you or while performing duties related to the conduct of your business (including participation in any recreational activities sponsored by you).

    However, none of these "employees" or "volunteer workers" are insureds for the providing of or failure to provide professional health care services.

2.  Limits of Insurance

    a.  Sublimit Each Occurrence. This insurance is subject to a sublimit of:

        $ 500,000 each occurrence

    This sublimit is subject to the Each Occurrence Limit shown in the Declarations; it is not in addition to the Each Occurrence Limit.

    If a sublimit is not designated above, the applicable limit is the Each Occurrence Limit shown in the Declarations.

    b.  Aggregate. This insurance is subject to the General Aggregate Limit shown in the Declarations.

3.  The insurance provided by this endorsement for "bodily injury" to a co-"employee" or "volunteer worker" will not apply if the injured co-"employee's" or "volunteer worker's" sole remedy for such injury is provided under a workers' compensation law or any similar law.

4.  The insurance provided by this endorsement is excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis

LC 04 04 06 05

Boggs 003437

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400045

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Non-Cumulation of Liability
## (Same Occurrence)

This endorsement modifies the insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

1.  The following is added to paragraph 4. of the Limits of Insurance Section:

    If one "occurrence" causes "personal and advertising injury" to which this policy applies and to which one or more prior and/or future liability policy(ies) issued to you by us also applies, then this policy's Personal and Advertising Injury Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

2.  The following is added to paragraph 5. of the Limits of Insurance Section:

    If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future liability policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

3.  The final paragraph of the Limits of Insurance Section is replaced with the following:

    The aggregate Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the aggregated Limits of Insurance. However, the Each Occurrence Limit is the most we will pay for damages and Medical Expenses because of all "bodily injury" and "property damage" arising out of any one "occurrence" and the Personal and Advertising Injury Limit is the most we will pay for damage because of all "personal and advertising injury" arising out of any one "occurrence", regardless of the length of the policy period.

**LC 25 13 08 08**

Page 1 of 1

Boggs 003438

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400046

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## Personal and Advertising Injury Redefined - Definition of Publication

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraphs **d.** and **e.** of the definition of "personal and advertising injury" are replaced by the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**d.** Oral or written "publication" directly to the public at large of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

**e.**  **(1)**  Oral or written "publication" directly to the public at large of material that violates a person's right of privacy; or

  **(2)**  Oral or written "publication" of material that violates a person's right of privacy by misappropriation of that person's name or likeness.

The following definition is added to the Definitions Section:

"Publication" means an insured's act of disseminating or broadcasting material or information.  Publication does not include the wrongful appropriation, interception or retrieval of material or information by a third party or the insured's dissemination or broadcasting of material or information to a person who is the subject of the material or the information.

Boggs 003439

136201400023400047

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Personal and Advertising Injury - Occurrence Redefined

This endorsement modifies the insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **4.** of the Limits of Insurance section is replaced by the following:

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" arising out of any one "occurrence".

**B.** The definition of "occurrence" in the Definitions section is replaced by the following:

"Occurrence" means:

**a.** With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** With respect to "personal and advertising injury", an offense or series of related offenses.

**LC 29 06 08 08**

Page  1  of  1

Boggs 003440

136201400023400048

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PREMIUM RESPONSIBILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

Paragraph E. Premiums of the Common Policy Conditions is replaced by the following:

1. Each Named Insured is jointly and severally liable for all premiums due under this policy and for any other financial obligations of any Named Insured to us arising out of any agreements contained in this policy.

2. The first Named Insured will be the payee for any return premiums we pay.

LC 99 36 02 13          © 2013 Liberty Mutual Insurance. All rights reserved.          Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003441

136201400023400049

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADVERTISEMENT REDEFINED**

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

The definition of "advertisement" in the Definitions Section is replaced by the following:

"Advertisement" means a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a.   Announcements that are published include material placed on the Internet or on similar electronic means of communication; and

b.   Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

LC 29 08 10 11      © 2011, Liberty Mutual Group of Companies. All rights reserved.      Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003442

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400050

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### Damage First Occurring
### Prior to Policy Period - Exclusion

This endorsement modifies the insurance provided under the following:

        COMMERCIAL GENERAL LIABILITY COVERAGE PART
        OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" within the "products-completed operations hazard" if the injury or damage first occurred prior to the effective date of this policy.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400051

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number: TB2-Z51-283815-014
Issued by: LIBERTY MUTUAL FIRE INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TIME ELEMENT POLLUTION LIABILITY COVERAGE
Limited Off-Site Bodily Injury, Property Damage and Cleanup Costs Pollution Liability Coverage

### THIS IS DEFENSE WITHIN THE LIMITS COVERAGE. AMOUNTS WE SPEND ON DEFENSE OF CLAIMS AND SUITS WILL REDUCE THE LIMITS OF LIABILITY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The terms of this endorsement are subject to all of the provisions of the policy not expressly modified in this endorsement. However, Blanket Additional Insured provisions and Additional Insured endorsements that do not specifically refer to this endorsement will not apply to coverage under this endorsement.

A. **Definitions**

As used in this endorsement:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" does not include mental anguish, emotional distress or similar injury unless caused by physical injury.

"Cleanup costs" means any loss, cost or expense arising out of any:

1. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, restore, or assess the effects of "pollutants"; or

2. Claim or "suit" by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, restoring, or assessing the effects of "pollutants".

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

B. **Insuring Agreement**

1. a. Subject to b. and d. below, we will pay those sums that the insured becomes legally obligated to pay for:

   (1) Compensatory damages for "bodily injury" or "property damage" arising out of the discharge, release or escape of "pollutants" from a contained state at any premises, site or location on which the Named Insured is performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by the Named Insured; and

   (2) "Cleanup costs" that result from a discharge, release or escape of "pollutants" described in (1) above.

LD 04 10 06 11          © 2011 Liberty Mutual Group of Companies. All rights reserved.          Page 1 of 6
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003444

136201400023400052

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b.  Coverage provided under this endorsement applies only if the initial discharge, release or escape of "pollutants" from a contained state:

(1)  Commences during the policy period; and

(2)  Begins and ends completely within 6 days;

provided that we are notified in writing within 30 days of the commencement of the discharge, release or escape of "pollutants" from a contained state, regardless of when the insured becomes aware of the discharge, release or escape.

c.  We have the right and duty to defend any "suit" seeking those sums covered under this endorsement. We may, at our discretion, investigate or settle any claim or "suit" seeking such sums. Our right and duty to defend apply whether or not the sum of amounts paid under a. above and Supplementary Payments exceeds the deductible.

d.  (1)  The amount we will pay for damages, "cleanup costs" and/or Supplementary Payments is limited as described in Paragraph D., Limits Of Insurance, below.

(2)  Our right and duty to defend or pay defense costs under Supplementary Payments end when we have used up the applicable limit of insurance in the payment of judgments or settlements and/or Supplementary Payments. This applies both to claims and "suits" pending at that time and those filed thereafter. We have the right to withdraw from the defense of any "suit" when we have used up the applicable limit of insurance.

2.  Exclusions

a.  Paragraph 2., Exclusions, of Section I, Coverage A, applies to coverage under this endorsement, except as stated below. Each exclusion in Paragraph 2. of Coverage A will apply to "cleanup costs" as well as "bodily injury" and "property damage."

(1)  Exclusion f., Pollution, of Paragraph 2., Exclusions, of Section I, Coverage A, does not apply to coverage expressly granted by this endorsement.

(2)  The following is added to Exclusion j., Damage to Property, of Paragraph 2., Exclusions, of Section I, Coverage A:

If a release, discharge or escape of "pollutants" requires cleanup of property to which this exclusion applies, as well as other property, we will pay only for the "cleanup costs" for the other property.

b.  Additionally, this endorsement does not apply to:

(1)  "Bodily injury", "property damage" or "cleanup costs" arising from hostile fire;

(2)  Fines, penalties and exemplary or punitive damages;

(3)  "Bodily injury", "property damage" or "cleanup costs" arising out of the discharge, release or escape of "pollutants" from an underground storage tank, including any attached pumps, valves or piping which

(a)  Is buried below the surface of the ground or water; or

© 2011 Liberty Mutual Group of Companies. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003445

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400053

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

(b) At any time, had been buried under the surface of the ground or water and then subsequently exposed.

For purposes of this exclusion, buried means that at least 10% of the tank is below the surface of the ground.

(4) Any "bodily injury", "property damage" or "cleanup costs" determined to be covered, in whole or in part, under any other part of the policy, including any other endorsements, to which this endorsement is attached.

C. **Defense Within Limits**

1. With respect to claims or "suits" to which this endorsement applies, Supplementary Payments -- Coverage A and B of Section I -- Coverages is replaced by:

   We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. both:

      (1) fees, salaries and expenses of attorneys, legal interns and paralegals we retain (including our employees); and

      (2) all other expenses, including but not limited to expenses, fees, and/or any other amounts paid to or for experts and consultants, that we incur;

      that are directly allocable to the particular claim or "suit".

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit."

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance

   ALL SUPPLEMENTARY PAYMENTS MADE PURSUANT TO THIS ENDORSEMENT WILL REDUCE THE LIMITS OF INSURANCE AVAILABLE. However, amounts we pay for the salaries, fees and expenses of (1) independent adjusters we might hire and (2) any of our employees other than those described in a.(1) will not reduce the Limits of Insurance.

2. With respect to claims or "suits" to which this endorsement applies, the following Condition is added to Section IV - Commercial General Liability Conditions:

© 2011 Liberty Mutual Group of Companies. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003446

136201400023400054

Transfer of Duties When the Applicable Limit of Insurance Is Used Up.

a. When a limit of insurance has been used up in the payment of judgments, settlements and/or Supplementary Payments

   (1) We will notify the first Named Insured and any insured against whom a claim or "suit" is pending, in writing, as soon as practicable, that:

      (a) Such a limit has been used up, and

      (b) Our duty to defend claims and "suits" seeking damages or "cleanup costs" subject to that limit has also ended.

   (2) The first Named Insured and any insured against whom a claim or "suit" is pending will, as soon as practicable, arrange for the transfer of control of the defense of all such claims and "suits".

   (3) We will assist in, and all insureds must cooperate in, the transfer of control of the defense of all such claims and "suits" seeking damages or "cleanup costs" which are subject to that limit and which are reported to us before that limit is used up.

   (4) We will take steps we deem appropriate to avoid a default in, or continue the defense of, such claims or "suits" until the transfer is completed, provided the appropriate insured is cooperating in completing such transfer. The first Named Insured and any insured against whom a claim or "suit" is pending will reimburse us for any expenses we incur (for which expenses each Named Insured and each insured against whom the claim or "suit" is pending are jointly and severally liable) to take such steps on and after the date on which the applicable limit of insurance is used up.

   (5) We will take no action whatsoever with respect to any claim or "suit" reported to us after the applicable limit of insurance has been used up.

b. The duty to reimburse us will begin on the date the applicable limit of insurance is used up. The exhaustion of any limit of insurance by the payments of judgments, settlements and/or Supplementary Payments, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

**D. Limits Of Insurance**

1. a. Section III - Limits Of Insurance in the policy does not apply to this endorsement.

   b. Damages, "cleanup costs" and Supplementary Payments paid under this endorsement shall not reduce the General Aggregate Limit stated in the Declarations and are not subject to the Each Occurrence Limit listed in the Declarations.

   c. The Limits of Insurance and rules below fix the most we will pay regardless of the number of:

      (1) Insureds;

      (2) Claims made or "suits" brought; or

      (3) Persons or organizations making claims or bringing "suits".

© 2011 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003447

1362014000234000055

2. Time Element Pollution Liability Coverage Limits of Insurance

| $100,000 | Per Incident Limit |
| $100,000 | Aggregate Limit |
| $2,500 | Deductible |

a. The Aggregate Limit is the most we will pay under this endorsement for the sum of all damages paid for "bodily injury", "property damage", "cleanup costs" and amounts paid under Supplementary Payments.

b. Subject to the Aggregate Limit, the Per Incident Limit is the most we will pay for the sum of all damages paid for "bodily injury", "property damage", "cleanup costs" and amounts paid under Supplementary Payments arising out of any discharge, release or escape of "pollutants" from a contained state or any series of interrelated or associated discharges, releases or escapes of "pollutants" from the same contained state arising from the same or similar cause.

If a series of interrelated or associated discharges, releases or escapes of "pollutants" arising from the same or similar causes includes discharges, releases or escapes of "pollutants" that commence during this policy period and discharges, releases or escapes of "pollutants" that commence during the policy period of one or more prior and/or future Pollution Liability Coverage Endorsements issued to you by us, then this endorsement's Per Incident Limit will be reduced by the amount of each payment made by us under the other endorsements because of such discharges, releases and escapes of "pollutants".

c. Deductible

For each discharge, release or escape covered under the Per Incident Limit, you are obligated to pay up to the Deductible for the total of (1) damages paid for "bodily injury" and "property damage"; (2) "cleanup costs"; and (3) Supplementary Payments.

We are obligated to pay only that portion of the total of such damages, "cleanup costs" and Supplementary Payments which exceeds such deductible amounts, subject to the limits of insurance set forth in this endorsement. Amounts paid or payable by you under this Paragraph c. will not reduce the Per Incident Limit or the Aggregate Limit listed above.

d. Subrogation

In the event we recover any advance or payment made under this policy by exercising our right of subrogation, the amount so recovered shall first be applied to any payments made by us in excess of the deductible amount; only then shall the remainder of such recovery, if any, be applied to reduce the deductible amount payable or paid by you.

e. Named Insured's Duties

(1) The first Named Insured is authorized to act and agrees to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy and is responsible for the payment of all Deductible Amounts on behalf of all persons or organizations insured.

(2) Each Named Insured is jointly and severally liable for all Deductible Amounts due under this endorsement.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

LD 04 10 06 11    © 2011 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 5 of 6

Boggs 003448

136201400023400056

f.   Other Rights and Duties

We have the right and duty to defend any claim or "suit" seeking damages and "cleanup costs" to which this policy applies, regardless of the application of the deductible.  You must promptly reimburse us for any Supplementary Payments within the deductible amount.

All other terms of this policy, including the insured's duties in the event of an Occurrence, Offense, Claim or Suit, apply irrespective of application of the deductible amount.

We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and you will promptly reimburse us for such part or all of the deductible amount as has been paid by us. Payment of defense costs or amounts within the deductible will not create any obligations or be construed as a waiver or estoppel of our rights under the policy.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP46603937

© 2011 Liberty Mutual Group of Companies. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003449

136201400023400057

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number **TB2-Z51-283815-014**
Issued by **LIBERTY MUTUAL FIRE INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NOTICE OF CANCELLATION TO THIRD PARTIES**

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE PART
    MOTOR CARRIER COVERAGE PART
    GARAGE COVERAGE PART
    TRUCKERS COVERAGE PART
    EXCESS AUTOMOBILE LIABILITY INDEMNITY COVERAGE PART
    SELF-INSURED TRUCKER EXCESS LIABILITY COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

| Schedule | | |
|---|---|---|
| **Name of Other Person(s) / Organization(s):** | **Email Address or mailing address:** | **Number Days Notice:** |
| On file with the agent | | 30 |
| | | |
| | | |

A.  If we cancel this policy for any reason other than nonpayment of premium, we will notify the persons or organizations shown in the Schedule above. We will send notice to the email or mailing address listed above at least 10 days, or the number of days listed above, if any, before the cancellation becomes effective. In no event does the notice to the third party exceed the notice to the first named insured.

B.  This advance notification of a pending cancellation of coverage is intended as a courtesy only. Our failure to provide such advance notification will not extend the policy cancellation date nor negate cancellation of the policy.

All other terms and conditions of this policy remain unchanged.

LIM 99 01 05 11    © 2011 Liberty Mutual Group of Companies. All rights reserved.    Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

136201400023400058

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL GENERAL LIABILITY ENHANCEMENT FOR CONTRACTORS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Index of modified items:

Item 1.    **Reasonable Force**
Item 2.    **Non-Owned Watercraft Extension**
Item 3.    **Damage To Premises Rented To You - Expanded Coverage**
Item 4.    **Bodily Injury To Co-Employees**
Item 5.    **Health Care Professionals As Insureds**
Item 6.    **Knowledge Of Occurrence**
Item 7.    **Notice Of Occurrence**
Item 8.    **Unintentional Errors And Omissions**
Item 9.    **Bodily Injury Redefinition**
Item 10.   **Supplementary Payments – Increased Limits**
Item 11.   **Property In Your Care, Custody Or Control**
Item 12.   **Mobile Equipment Redefinition**
Item 13.   **Newly Formed Or Acquired Entities**
Item 14.   **Blanket Additional Insured Where Required By Written Contract**
           Lessors of Leased Equipment
           Managers or Lessors of Premises
           Mortgagees, Assignees or Receivers
           Owners, Lessees or Contractors
           Architects, Engineers or Surveyors
           Any Person or Organization
Item 15.   **Blanket Additional Insured – Grantors Of Permits**
Item 16.   **Waiver Of Right Of Recovery By Written Contract Or Agreement**
Item 17.   **Other Insurance Amendment**
Item 18.   **Contractual Liability - Railroads**

Item 1.  Reasonable Force

Exclusion a. of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

a.   Expected Or Intended Injury

     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Item 2.  Non-Owned Watercraft Extension

Paragraph (2) of Exclusion g. of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

(2) A watercraft you do not own that is:

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003451

136201400023400059

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

(a) Less than 55 feet long; and

· (b) Not being used to carry persons or property for a charge;

**Item 3.  Damage To Premises Rented To You - Expanded Coverage**

A.  The final paragraph of 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

Exclusions c. through n. do not apply to damage by fire, lightning or explosion or subsequent damages resulting from such fire, lightning or explosion including water damage to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

B.  Paragraph 6. of Section III – Limits Of Insurance is replaced by the following:

6.  Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning, explosion or subsequent damages resulting from such fire, lightning or explosion including water damage to premises while rented to you or temporarily occupied by you with permission of the owner.

The Damage To Premises Rented To You Limit is the greater of:

a.  $300,000; or

b.  The Damage To Premises Rented To You Limit shown on the Declarations.

C.  Paragraph 9.a. of the definition of "insured contract" in Section V – Definitions is replaced by the following:

a. A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning, explosion or subsequent damages resulting from such fire, lightning or explosion including water damage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract".

D.  The paragraph immediately following Paragraph (6) of exclusion j. of Section I – Coverage A  – Bodily Injury And Property Damage Liability is replaced by the following:

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire, lightning or explosion or subsequent damages resulting from such fire, lightning or explosion including water damage) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

**Item 4.  Bodily Injury To Co-Employees**

A.  Paragraph 2. of Section II – Who Is An Insured is amended to include:

Each of the following is also an insured:

Your supervisory or management "employees" (other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company)) are insureds while in the course of their employment or while performing duties related to the conduct of your business with respect to "bodily injury":

(1) To you;

(2) To your partners or members (if you are a partnership or joint venture);

   © 2012 Liberty Mutual Insurance. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003452

136201400023400060

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

(3) To your members (if you are a limited liability company); or

(4) To a co-"employee" or "volunteer worker" while that co-"employee" or "volunteer worker" is either in the course of his or her employment by you or while performing duties related to the conduct of your business (including participation in any recreational activities sponsored by you).

Your "employees" (other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company)) or "volunteer workers" are insureds while in the course of their employment or while performing duties related to the conduct of your business for a Good Samaritan Act that results in "bodily injury":

(1) To you;

(2) To your partners or members (if you are a partnership or joint venture);

(3) To your members (if you are a limited liability company); or

(4) To a co-"employee" or "volunteer worker" while that co-"employee" or "volunteer worker" is either in the course of his or her employment by you or while performing duties related to the conduct of your business (including participation in any recreational activities sponsored by you).

A Good Samaritan Act means an attempt to rescue or aid a person in imminent or serious peril, provided the attempt is not recklessly made.

However, none of these "employees" (including supervisory or management "employees") or "volunteer workers" are insureds for the providing or failure to provide professional health care services.

B. The insurance provided by this Item 4. will not apply if the injured person's sole remedy for such injury is provided under a workers' compensation law or any similar law.

C. Other Insurance

The insurance provided by this Item 4. is excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis.

Item 5. Health Care Professionals As Insureds

A. Paragraphs 2.a.(1)(a) and (d) of Section II - Who Is An Insured do not apply to "bodily injury" or "personal and advertising injury" arising out of the providing of or failure to provide professional health care services by any "employee" or "volunteer" of the Named Insured who is a "designated health care provider" if the "bodily injury" or "personal and advertising injury" occurs in the course and scope of the "designated health care provider's" employment by the Named Insured.

B. With respect to "employees" and "volunteer workers" providing professional health care services. the following exclusions are added to Paragraph 2. Exclusions of Section I — Coverage A — Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I — Coverage B — Personal And Advertising Injury Liability:

This insurance does not apply to:

(1) Liability assumed under an "insured contract" or any other contract or agreement;

(2) Liability arising out of the providing of professional health care services in violation of law;

(3) Liability arising out of the providing of any professional health care services while in any degree under the influence of intoxicants or narcotics;

(4) Liability arising out of any dishonest, fraudulent, malicious or knowingly wrongful act or failure to act; or

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003453

136201400023400061

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

   (5) Punitive or exemplary damages, fines or penalties.

C. The following definition is added to Section V - Definitions:

"Designated health care provider" means any "employee" or "volunteer worker" of the Named Insured whose duties include providing professional health care services, including but not limited to doctors, nurses, emergency medical technicians or designated first aid personnel.

D. Other Insurance

The insurance provided by this Item 5. is excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis.

Item 6.  Knowledge Of Occurrence

Knowledge of an "occurrence" by your agent, servant or "employee" will not in itself constitute knowledge by you unless your "executive officer" or "employee" or other third party designated by you to notify us of "occurrences" has knowledge of the "occurrence".

Item 7.  Notice Of Occurrence

For purposes of Paragraph 2.a. of Section IV - Conditions, you refers to an "executive officer" of the Named Insured or to the "employee" designated by the insured to give us notice.

Item 8.  Unintentional Errors And Omissions

Unintentional failure of the Named Insured to disclose all hazards existing at the inception of this policy shall not be a basis for denial of any coverage afforded by this policy.   However, you must report such an error or omission to us as soon as practicable after its discovery.

This provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

Item 9.  Bodily Injury Redefinition

The definition of "bodily injury" in Section V - Definitions is replaced by the following:

"Bodily injury" means:

a.  Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and

b.  Mental anguish, shock or humiliation arising out of injury as defined in Paragraph a. above. Mental anguish means any type of mental or emotional illness or distress.

Item 10.  Supplementary Payments - Increased Limits

Paragraphs 1.b. and 1.d. of Section I - Supplementary Payments - Coverages A And B, are replaced by the following:

b.  Up to $3,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" including substantiated loss of earnings up to $500 a day because of time off from work.

LC 04 43 05 12        © 2012 Liberty Mutual Insurance. All rights reserved.       Page 4 of 9
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003454

136201400023400062

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

**Item 11.   Property In Your Care, Custody Or Control**

A.   Paragraphs (3) and (4) of exclusion j. of Section I – Coverage A – Bodily Injury and Property Damage Liability only apply to:

   1.   "Property damage" to borrowed equipment, or

   2.   "Property damage" to property in your care, custody and control while in transit.

B.   This insurance does not apply to any portion of a loss for which the insured has available any other valid and collectible insurance, whether primary, excess, contingent, or on any other basis, unless such other insurance was specifically purchased by the insured to apply in excess of this policy.

C.   Limits of Insurance

   Subject to Paragraphs 2., 3., and 5. of Section III – Limits Of Insurance, the most we will pay for insurance provided by Paragraph A., above is:

      $10,000 Each Occurrence Limit

      $25,000 Aggregate Limit

   The Each Occurrence Limit for this coverage applies to all damages as a result of any one "occurrence" regardless of the number of persons or organizations who sustain damage because of that "occurrence".

   The Aggregate Limit is the most we will pay for the sum of all damages under this Item 11.

**Item 12.   Mobile Equipment Redefinition**

The definition of "Mobile Equipment" in Section V – Definitions is amended to include self-propelled vehicles with permanently attached equipment less than 1000 pounds gross vehicle weight that are primarily designed for:

(1)   Snow removal;

(2)   Road Maintenance, but not construction or resurfacing; or

(3)   Street cleaning.

**Item 13.   Newly Formed Or Acquired Entities**

Paragraph 3. of Section II – Who Is An Insured is replaced by the following:

3.   Any organization, other than a partnership or joint venture, you newly acquire or form and over which you maintain majority ownership or majority interest will qualify as a Named Insured if there is no other similar insurance available to that organization.

   a.   Coverage under this provision is afforded only until:

      (1)   The 180th day after you acquire or form the organization;

      (2)   Separate coverage is purchased for the organization; or

      (3)   The end of the policy period,

      whichever is earlier.

   b.   Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003455

136201400023400063

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**Item 14.   Blanket Additional Insured Where Required By Written Contract**

Paragraph 2. of Section II - Who Is An Insured is amended to add the following:

e.   Additional Insured by Written Contract or Written Agreement

The following are insureds under the policy when you have agreed in a written contract or written agreement to provide them coverage as additional insureds under your policy:

(1)   **Lessors of Leased Equipment:** The person(s) or organization(s) from whom you lease equipment, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

(2)   **Managers or Lessors of Premises:** Any manager or lessor of premises leased to you in which the written lease agreement obligates you to procure additional insured coverage.

The coverage afforded to the additional insured is limited to liability in connection with the ownership, maintenance or use of the premises leased to you and caused, in whole or in part, by some negligent acts or omissions of you, your "employees", your agents or your subcontractors. There is no coverage for the additional insured for liability arising out of the sole negligence of the additional insured or those acting on behalf of the additional insured, except as provided below.

If the written agreement obligates you to procure additional insured coverage for the additional insured's sole negligence, then the coverage for the additional insured shall conform to the agreement, but only if the applicable law would allow you to indemnify the additional insured for liability arising out of the additional insured's sole negligence.

This insurance does not apply to:

(a)   Any "occurrence" which takes place after you cease to be a tenant in that premises or to lease that land; or

(b)   Any premises for which coverage is excluded by endorsement.

(3)   **Mortgagees, Assignees or Receivers:** Any person(s) or organization(s) with respect to their liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of your premises. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

(4)   **Owners, Lessees or Contractors:** any person(s) or organization(s) to whom you are obligated by a written agreement to procure additional insured coverage, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your "employees", your agents, or your subcontractors, in the performance of your ongoing operations.

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of "your work" included in the "products-completed operations hazard" unless you are required to provide such coverage for the additional insured by the written agreement, and then only for the period of time required by the written agreement and only for liability caused, in whole or in part, by your acts or omissions or the acts or omissions of your "employees", your agents, or your subcontractors.

There is no coverage for the additional insured for liability arising out of the sole negligence of the additional insured or those acting on behalf of the additional insured, except as provided below.

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003456

136201400023400064

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

If the written agreement obligates you to procure additional insured coverage for the additional insured's sole negligence, then the coverage for the additional insured shall conform to the agreement, but only if the applicable law would allow you to indemnify the additional insured for liability arising out of the additional insured's sole negligence.

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

(a) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Supervisory, inspection, architectural or engineering activities.

(5) **Architects, Engineers or Surveyors:** any architect, engineer, or surveyor engaged by you but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(a) In connection with your premises; or

(b) In the performance of your ongoing operations.

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

(a) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Supervisory, inspection, architectural or engineering activities.

(6) **Any Person or Organization Other Than a Joint Venture:** Any person or organization (other than a joint venture of which you are a member) for whom you are obligated by a written agreement to procure additional insured coverage, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

(a) In the performance of your ongoing operations; or

(b) In connection with premises owned by you.

This insurance does not apply to:

1. Any construction, renovation, demolition or installation operations performed by or on behalf of you, or those operating on your behalf;

2. Any person or organization whose profession, business or occupation is that of an architect, surveyor or engineer with respect to liability arising out of the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, specification or the performance of any other professional services by such person or organization; or

3. Any person or organization more specifically covered in Paragraphs e.(1) through (5) above.

The insurance afforded to any person or organization as an insured under this Paragraph 2.e.:

(1) Applies only to coverage and minimum limits of insurance required by the written agreement or written contract, but in no event exceeds either the scope of coverage or the limits of insurance provided by this policy;

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003457

13620140002340065

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

(2) Does not apply to any person or organization for any "bodily injury", "property damage" or "personal and advertising injury" if any other additional insured endorsement attached to this policy applies to that person or organization with regard to the "bodily injury", "property damage" or "personal and advertising injury";

(3) Applies only if the "bodily injury" or "property damage" occurs, or offense giving rise to "personal and advertising injury" is committed, subsequent to the execution of the written agreement; and

(4) Applies only if the written agreement is in effect at the time the "bodily injury" or "property damage" occurs, or at the time the offense giving rise to the "personal and advertising injury" is committed.

**Item 15.   Blanket Additional Insured – Grantors Of Permits**

Paragraph 2. of Section II - Who Is An Insured is amended to add the following:

Any state, municipality or political subdivision with respect to any operations performed by you or on your behalf, or in connection with premises you own, rent or control and to which this insurance applies, for which the state, municipality or political subdivision has issued a permit.

However, this insurance does not apply to:

1.   "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state, municipality or political subdivision;

2.   Any "bodily injury" or "property damage" included within the "products-completed operations hazard", except when required by written contract or agreement initiated prior to loss; or

3.   "Bodily injury", "property damage" or "personal and advertising injury", unless negligently caused, in whole or in part, by you or those acting on your behalf.

**Item 16.   Waiver Of Right Of Recovery By Written Contract Or Agreement**

The following is added to Paragraph 8. Transfer Of Rights Of Recovery Against Others To Us of Section IV – Conditions:

We waive any right of recovery because of payments we make under this policy for injury or damage arising out of your ongoing operations or "your work" included in the "products-completed operations hazard" that we may have against any person or organization with whom you have agreed in a written contract or agreement to waive your rights of recovery but only if the "bodily injury" or "property damage" occurs, or offense giving rise to "personal and advertising injury" is committed subsequent to the execution of the written contract or agreement.

**Item 17.   Other Insurance Amendment**

If you are obligated under a written agreement to provide liability insurance on a primary, excess, contingent, or any other basis for any person or organization that qualifies as an additional insured on this policy, this policy will apply solely on the basis required by such written agreement and Paragraph 4. Other Insurance of Section IV – Conditions will not apply.  Where the applicable written agreement does not specify on what basis the liability insurance will apply, the provisions of Paragraph 4. Other Insurance of Section IV – Conditions will govern.  However, this insurance is excess over any other insurance available to the additional insured for which it is also covered as an additional insured by attachment of an endorsement to another policy providing coverage for the same "occurrence", claim or "suit".

**Item 18.   Contractual Liability – Railroads**

Paragraph 9. of Section V - Definitions is replaced by the following:

9.   "Insured Contract" means:

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003458

136201400023400066

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.  A sidetrack agreement;

c.  Any easement or license agreement;

d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement;

f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(2)  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003459

136201400023400067

Policy Number  TB2-Z51-283815-014
Issued by    LIBERTY MUTUAL FIRE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DESIGNATED CONSTRUCTION PROJECT OR DESIGNATED LOCATION
COMBINED AGGREGATE LIMITS – WITH TOTAL PROJECT AND LOCATION AGGREGATE LIMIT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

**Designated Construction Project(s) or Designated Location(s): Location means any premise that you occupy for permanent operations as part of your business, but does not include any premises at which you are performing operations as part of a construction project. All premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad shall be considered a single "location".**

**Project means any premises at which you are performing operations as part of a single construction project.**

**Total Project and Location Aggregate Limit $ 5,000,000**

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage A, and for all medical expenses caused by accidents under Section I - Coverage C, which can be attributed only to ongoing operations at a single designated construction project or a single designated "location":

1. A separate Designated General Aggregate Limit applies to each designated construction project and to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated General Aggregate Limit for that designated construction project or designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated General Aggregate Limit for any other, designated construction project or designated "location".

LC 25 19 10 13              © 2013 Liberty Mutual Insurance. All rights reserved.              Page 1 of 2
              Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003460

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400068

4. The limits shown in the Declarations for Each Occurrence, Damage to Premises Rented to You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated General Aggregate Limit and the Total Project and Location Aggregate Limit.

5. The Total Project and Location Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for the sum of all damages caused by "occurrences" under Section I – Coverage A and all medical expenses caused by accidents under Section I – Coverage C which can be attributed only to ongoing operations at a single construction project or a single "location", regardless of the number of construction projects, locations, "occurrences" or accidents.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage  A, and for all medical expenses caused by accidents under Section I -  Coverage C, which cannot be attributed only to ongoing operations at a single designated construction project or single designated "location":

1. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated General Aggregate Limit.

D. If the applicable construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E. For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:

"Location" means any premise that you occupy for permanent operations as part of your business, but does not include any premises at which you are performing operations as part of a construction project.  All premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad shall be considered a single "location".

F. The provisions of Section III - Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003461

136201400023400069

COMMERCIAL GENERAL LIABILITY
CG 20 33 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Section II – Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and

2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

CG 20 33 04 13                © Insurance Services Office, Inc., 2012                Page 1 of 2

Boggs 003462

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400070

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

2. "Bodily injury" or "property damage" occurring after:

    a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. With respect to the insurance afforded to these additional insureds, the following is added to Section III – Limits Of Insurance:

The most we will pay on behalf of the additional insured is the amount of insurance:

    1. Required by the contract or agreement you have entered into with the additional insured; or

    2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

CG 20 33 04 13

Boggs 003463

136201400023400071

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Boggs 003464

136201400023400072

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 21 87 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. **Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

© ISO Properties, Inc., 2005

Boggs 003465

136201400023400073

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a. Physical injury that involves a substantial risk of death; or

b. Protracted and obvious physical disfigurement; or

c. Protracted loss of or impairment of the function of a bodily member or organ.

© ISO Properties, Inc., 2005

CG 21 87 01 07

Boggs 003466

136201400023400074

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Boggs 003467

136201400023400075

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 26 88 01 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ALASKA EXCLUSION OF
# CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

TERRORISM

"Any injury or damage" arising out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

Boggs 003468

136201400023400076

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP460Э37

COMMERCIAL GENERAL LIABILITY
CG 32 14 01 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ALASKA CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. Applicability Of The Provisions Of This Endorsement

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

CG 32 14 01 07

© ISO Properties, Inc., 2005

Boggs 003469

136201400023400077

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

   1. "Terrorism" means activities against persons, organizations or property of any nature:

      a. That involve the following or preparation for the following:

         (1) Use or threat of force or violence; or

         (2) Commission or threat of a dangerous act; or

         (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

      b. When one or both of the following applies:

         (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

         (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

   2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

   1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

   2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

   3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

   5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

   6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

      a. Physical injury that involves a substantial risk of death; or

      b. Protracted and obvious physical disfigurement; or

      c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2005

Boggs 003470

136201400023400078

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 32 20 01 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WASHINGTON CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. Applicability Of The Provisions Of This Endorsement

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

CG 32 20 01 07                          © ISO Properties, Inc., 2005                          Page 1 of 3

Boggs 003471

136201400023400079

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

© ISO Properties, Inc., 2005

CG 32 20 01 07

Boggs 003472

136201400023400080

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

Boggs 003473

136201400023400081

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Boggs 003474

136201400023400082

POLICY NUMBER: TB2-Z51-283815-014

COMMERCIAL GENERAL LIABILITY
CG 21 54 01 96

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1) Provides coverage identical to that provided by this Coverage Part;

(2) Has limits adequate to cover all claims; or

(3) Remains in effect.

## SCHEDULE

Description and Location of Operation(s):

All locations and operations subject to a wrap-up insurance program or other consolidated insurance program.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Copyright, Insurance Services Office, Inc., 1994

Boggs 003475

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400083

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Boggs 003475

136201400023400084

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

  **2. Exclusions**

    This insurance does not apply to:

    **Fungi Or Bacteria**

    **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

    This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

  **2. Exclusions**

    This insurance does not apply to:

    **Fungi Or Bacteria**

    **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

    **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the Definitions Section:

  "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

Boggs 003477

136201400023400085

COMMERCIAL GENERAL LIABILITY
CG 22 80 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you, but only with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

Professional services include:

1. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

2. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you with respect to your providing engineering, architectural or surveying services in your capacity as an engineer, architect or surveyor.

This exclusion does not apply to your operations in connection with construction work performed by you or on your behalf.

© Insurance Services Office, Inc., 2012

Boggs 003478

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

136201400023400086

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Nuclear Energy Liability Exclusion Endorsement (Broad Form)

This endorsement modifies the insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**I.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2007

Boggs 003479

136201400023400087

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Boggs 003480

136201400023400088

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### Asbestos Exclusion Endorsement

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MOTOR TRUCK CARGO COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRINTERS LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
WAREHOUSEMAN'S LEGAL LIABILITY COVERAGE PART

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" arising out of or caused by, or allegedly caused by, asbestos either alone or in combination with other substances or factors.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

LC 21 01 06 05

Boggs 003481

136201400023400089

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE  READ IT CAREFULLY.**

## Silica Exclusion Endorsement

This endorsement modifies the insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
> GARAGE COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MOTOR TRUCK CARGO COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRINTERS LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK
> WAREHOUSEMEN'S LIABILITY COVERAGE PART

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" any part of which is caused by, or allegedly caused by, silica in any form or any substance containing silica, either alone or in combination with other substances or factors, whether included in a product or otherwise.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

LC 21 02 06 05

Boggs 003482

136201400023400090

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Discrimination Exclusion

This endorsement modifies the insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

Damages arising out of unlawful discrimination.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

LC 21 04 06 05

Boggs 003483

136201400023400091

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Lead Exclusion

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

This insurance does not apply to:

1. Any actual or alleged liability, damages, loss or injury that results directly or indirectly from the ingestion, inhalation, exposure to or absorption of lead in any form or to any claims or "suits" arising from lead;

2. Actual or alleged "property damage" that results directly or indirectly from lead or the exposure to lead in any form or to any claims or "suits" arising from lead;

3. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead in any form; or

4. Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

LC 21 06 06 07

Boggs 003484

136201400023400092

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Radioactive Matter Exclusion

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE PART
MOTOR TRUCK CARGO COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" that arises out of, or allegedly arises out of, exposure to or the presence of "radiation" and/or "radioactive matter" whether such "pollutants" are alone or combined with any other substances or factors, whether included in a product or otherwise. This exclusion applies regardless of whether such exposure occurs within or outside a building.

Without limiting or expanding the term "pollutants" as used in any policy issued by us, the following sentence is included in the definition of "pollutants":

"Pollutants" include, but are not limited to, "radiation" and/or "radioactive matter".

"Radiation" and/or "radioactive matter" includes, but is not limited to, ionizing radiation (either directly from unstable atomic nuclei or atoms, or as a consequence of a nuclear reaction), radioactive isotopes, alpha or beta particles or rays, gamma rays, X-Rays, photons, nucleons, including protons and neutrons, and electrons.

This exclusion applies whether or not such "pollutants" have any function in your business, operations, premises, site or location.

LC 21 39 06 07

Page  1 of  1

Boggs 003485

136201400023400093

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CONTRACTUAL LIABILITY EXCLUSION AMENDED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Paragraph b. of 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

   b.  Contractual Liability

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   (1)  That the insured would have in the absence of the contract or agreement; or

   (2)  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

B.  We will defend any claim made or "suit" brought against the indemnitee under an "insured contract" which you are required to defend the indemnitee by the specific terms of such "insured contract", but only to the same extent and on the same terms that we would defend if the indemnitee were the insured under the policy, and then only if all of the following conditions are satisfied:

   1.  the claim or "suit" seeks damages for which the indemnitee is legally entitled to indemnification under the "insured contract";

   2.  the policy covers such damages; and

   3.  the applicable Limit of Insurance with respect to such damages has not been exhausted by payment of judgments or settlements.

C.  Supplementary Payments - Coverages A And B is replaced by the following:

Supplementary Payments - Coverages A And B

   1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured or indemnitee we defend:

   a.  All expenses we incur.

   b.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

   c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

  © 2011, Liberty Mutual Group of Companies.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with
its permission.

Boggs 003486

136201400023400094

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

e.  All costs taxed against the insured in the "suit".  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

© 2011. Liberty Mutual Group of Companies.  All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Boggs 003487

136201400023400095

## Important Notice to Policyholders

Do you employ contractors or subcontractors? If so, you may be subject to added insurance costs.

You can minimize these added insurance costs by obtaining valid certificates of insurance from all of your contractors and subcontractors indicating presence of liability insurance. These certificates should be maintained for review by our auditor.

If you are unable to provide valid certificates at the time of audit, the contractor's or subcontractor's exposure may be added to your exposure and a primary insurance charge will be made based on the lack of other insurance. Recent court decisions have held general or principle contractors liable for the acts of uninsured subcontractors.

If you are able to produce valid certificates at the time of audit, an appropriate subcontracted work class such as the following will be added to your exposures such as:

> Contractors - Subcontracted Work - in connection with building construction, reconstruction, repair or erection - apartment or office buildings over four stories.

This is a secondary or contingent insurance charge based on the availability of other insurance which may apply to a loss involving you and your contractors or subcontractors.

We appreciate the opportunity to serve you and hope you will find this information useful. If you have questions about this or any other insurance matter, please contact your Wausau Insurance Companies representative.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

ST2000
03-87

Page 1 of 1

Boggs 003488

136201400023400096

**IMPORTANT NOTICE REGARDING THE EXPIRATION OF THE TERRORISM RISK INSURANCE ACT AND THE REDUCTION IN COVERAGE FOR TERRORISM LOSSES**

**PLEASE READ THIS NOTICE CAREFULLY**

This is to notify you of a reduction in coverage for terrorism losses under your insurance policy when the Terrorism Risk Insurance Act ("TRIA") expires, which is scheduled to occur on December 31, 2014. This notice **DOES NOT** apply to Workers Compensation insurance.

TRIA, as amended, is a temporary program that spreads losses from government "certified" acts of terrorism between insurers and the federal government. In summary, TRIA requires insurers to make coverage for "certified acts of terrorism" available, and to pay losses from "certified acts of terrorism" up to a deductible amount. If an individual insurer's losses exceed this amount, the government will reimburse the insurer for 85% of losses paid in excess of the deductible.

Policyholders have the option to accept or reject this coverage.

TRIA will expire on December 31, 2014, unless Congress and the President act to extend it. Otherwise, after 2014, the federal government will no longer "certify" acts of terrorism or reimburse losses caused by "certified acts of terrorism."

If you purchase coverage for "certified acts of terrorism," and TRIA expires on or after December 31, 2014, your insurance coverage will be reduced. After the date TRIA expires, where permitted by state law*, you will no longer have insurance for losses from acts of terrorism that directly or indirectly involve nuclear or radioactive agents or materials, or pathogenic or poisonous biological or chemical agents or materials ("NBCR").

If you elect not to purchase coverage for "certified acts of terrorism," and TRIA expires on or after December 31, 2014, losses caused by any terrorist act will be excluded from your policy, where permitted by state law*.

* Some states, including New York and Florida, may not approve or allow the use of certain exclusions related to acts of terrorism. Therefore, exclusions for losses caused by acts of terrorism may not apply in all states.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP460937

Boggs 003489

136201400023400097

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

## Disclosure – Terrorism Risk Insurance Act

**This Endorsement Is Made Part Of Your Policy Pursuant To The Terrorism Risk Insurance Act.**

In accordance with the Terrorism Risk Insurance Act, including all amendments, ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

### Disclosure of Premium

The Company has made available coverage for "certified acts of terrorism" as defined in the Act. If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown in the Declarations, Declarations Extension Schedule or elsewhere by endorsement in your policy.

### Federal Participation In Payment Of Terrorism Losses

If an individual insurer's losses exceed a deductible amount specified in the Act, the federal government will reimburse the insurer for 85% of losses paid in excess of the deductible, provided that aggregate industry losses from a "certified act of terrorism" exceed $100 million.

### Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

EN 90 48 07 09        © 2008, Liberty Mutual Group of Companies. All rights reserved.        Page 1 of 1

Boggs 003490

136201400023400098

Policy Number TB2-Z51-283815-014
Issued by Liberty Mutual Fire Insurance Co.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Premium Determination - Subcontractors

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following provision is added to Section IV-Conditions:

You shall obtain adequate certificates of insurance for commercial general liability coverage from all independent contractors and sub-contractors doing work on your behalf. Such certificates must:

1.  Specify that you are an Additional Insured,

2.  Specify an Each Occurrence Limit at least equal to $1,000,000,

3.  Specify insurance written on an occurrence basis, and

4.  Specify insurance that is effective during the course of the work for you.

As evidence for adequate insurance, at final premium audit we will require you to provide us with certificates of insurance for all independent contractors and sub-contractors who performed work on your behalf during the policy period. Failure to provide adequate certificates of insurance for any contractor or sub-contractors will not alter the coverage provided under this policy but will result in the treatment of that independent contractor or sub-contractor as your employee for rating purposes.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

LG 32 06 11 05

Boggs 003491

136201400023400099

## POLICYHOLDER NOTICE - COMPANY CONTACT INFORMATION

In the event you need to contact someone about this policy for any reason, please contact your Sales Representative or Producer of Record as shown on the policy Declarations or Information Page.

If you have additional questions, you may contact the company at the following address:

**Liberty Mutual Insurance**
**175 Berkeley Street**
**Boston, MA 02116**
**(617) 357-9500 Ext. 41015**

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Boggs 003492

136201400023400100

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

## LIBERALIZATION NOTICE

**This Liberalization Notice applies only if this policy is a renewal of an expiring policy issued to you by us.**

This notice applies to insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

With respect to coverage for any claim or suit. the terms and conditions of this policy or the expiring policy it replaces, whichever is broader. will govern, subject to the following exceptions:

1.  The limits of insurance of this policy will apply;

2.  The premium and any deductible or self-insured retention amounts and provisions of this policy will apply;

3.  Coverage will only be provided to persons or organizations that qualify as insureds on this policy;

4.  Terrorism endorsements on this policy will apply regardless of the terms of the expiring policy;

5.  The endorsements on this policy, if any, shown in the Schedule, which will apply regardless of the terms of the expiring policy;

6.  The endorsements on your expiring policy. if any, shown in the Schedule, which have not been continued on this policy and will not apply to this policy; and

7.  Any Other Changes described in the Schedule.

### Schedule

| Endorsements on this policy: | |
|---|---|
| Form # | Form Name |
| | |
| | |
| | |

| Endorsements on your expiring policy that have not been continued: | |
|---|---|
| Form # | Form Name |
| | |

| Other Changes: |
|---|
| |

SNL 90 04 10 13      © 2013 Liberty Mutual Insurance. All rights reserved.      Page 1 of 1

Boggs 003493

STATE OF SOUTH CAROLINA                )

COUNTY OF YORK                         )          IN THE COURT OF COMMON PLEAS

Edward C. Hoover and Kristen E. Gurri, )          CIVIL ACTION COVERSHEET
Individually, and as Guardian Ad Litem for A.
Hoover and B. Hoover,               )

                    Plaintiff(s)    )          2015 CP-46-3290

            vs.                     )

Boggs Paving, Inc. and York County,    )

                    Defendant(s)    )

Submitted By: Neal D. Truslow              SC Bar #:    77806
Address: Truslow & Truslow, P.A.           Telephone #:  (803) 256-6276
P.O. Box 1465                              Fax #:        (803) 256-7659
Columbia, SC 29202                         Other:    mackenziewoodward@truslowlaw.com
                                           E-mail:    nealtruslow@truslowlaw.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as
required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed,
and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

DOCKETING INFORMATION (Check all that apply)
                        *If Action is Judgment/Settlement do not complete

☐ JURY TRIAL demanded in complaint.      ☒ NON-JURY TRIAL demanded in complaint.
☒ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (100) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20___ -NI-____ - | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| Warranty (160) | ☐ Other (299) | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | | ☐ Slander/Libel (380) | ☐ Other (499) |
| ☐ Employment (180) | | ☒ Other (399) | |
| ☐ Other (199) | | | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured | ☐ Worker's Comp (960) |
| | | Settlement Payment Rights | ☐ Zoning Board (970) |
| | | Application (760) | ☐ Public Service Comm. (990) |

| Special/Complex /Other | | | |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | ☐ Petition for Workers | |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) | Compensation Settlement | ☐ Other (999) |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in | Approval (780) | |
| ☐ Sexual Predator (510) | an Out-of-County Action (660) | ☐ Other (799) | |
| | ☐ Pre-Suit Discovery (670) | | |

Submitting Party Signature: _____          Date: 10/26/2015

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

FILED-RECEIVED 2015 OCT 29 PH 12: DAVID HAMILTON C.C.C.P. & G.S. YORK COUNTY, S.C.

COPY

**Note:** Frivolous civil proceedings  may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Page 2 of 3

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

## FOR MANDATED ADR COUNTIES ONLY

Aiken, Allendale, Anderson, Bamberg, Barnwell, Beaufort, Berkeley, Calhoun, Charleston, Cherokee, Clarendon, Colleton, Darlington, Dorchester, Florence, Georgetown, Greenville, Hampton, Horry, Jasper, Kershaw, Lee, Lexington, Marion, Oconee, Orangeburg, Pickens, Richland, Spartanburg, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**     **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF YORK )

CASE NO.: 2015CP16 3290

Edward C. Hoover and Kristen E. Gurri,
Individually, and as Guardian *Ad Litem*
for A. Hoover and B. Hoover,

   Plaintiffs,

vs.

Boggs Paving, Inc. and York County,

   Defendants.

**SUMMONS**
(Non-Jury)

TO THE RESPONDENT ABOVE NAMED:

  YOU ARE HEREBY SUMMONED and required to answer the Petition herein, a copy of which is herewith served upon you, and to serve a copy of your answer to said Petition upon the subscriber, at his office mailing address: Post Office Box 1465, Columbia, SC 29202 (Physical address is 914 Richland Street, Suite B-102, Columbia, South Carolina, 29201) within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to answer the Petition within the time aforesaid, judgment will be rendered against you for the relief demanded in the Petition.

**[SIGNATURES ON FOLLOWING PAGE]**



ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Truslow & Truslow Law Firm

NEAL D. TRUSLOW
DOUGLAS N. TRUSLOW
Attorneys for Petitioner/Plaintiff
P.O. Box 1465
Columbia, SC  29202
(803) 256-6276
Fax (803) 256-7659
douglastruslow@truslowlaw.com
nealtruslow@truslowlaw.com


McDONALD, McKENZIE, RUBIN,
MILLER AND LYBRAND, L.L.P.

AMANDA PITTMAN
ATTORNEY FOR THE PLAINTIFFS
1704 Main Street
Post Office Box 58
Columbia, South Carolina 29202
(803) 252-0500

October 26 2015
Columbia, South Carolina

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

STATE OF SOUTH CAROLINA            )        IN THE COURT OF COMMON PLEAS

COUNTY OF YORK                     )        CASE NO.: 2015CP46-3290

Edward C. Hoover and Kristen E. Gurri,  )
Individually, and as Guardian *Ad Litem*  )
for A. Hoover and B. Hoover,       )

      Plaintiffs,            )
                                   )
vs.                                )        **COMPLAINT**
                                   )        (Non-Jury)
Boggs Paving, Inc. and York County,  )
                                   )
      Defendants.            )

The Plaintiffs, complaining of the Defendants, would respectfully show unto the Court that:

1. Plaintiffs are residents and citizens of the County of York, State of South Carolina.

2. Defendant Boggs Paving, Inc. ("Boggs"), as it relates to the within Complaint and upon information and belief, is a corporation organized and existing under the laws of the State of South Carolina and doing business in, upon information and belief, York County, South Carolina.

3. Defendant York County ("York"), as it relates to the within Complaint and upon information and belief, is a "political subdivision" within the meaning of the South Carolina Tort Claims Act (S.C. Code Ann. § 15-78-10, et. seq.).

4. This court has jurisdiction over the parties and the subject matter.

5. Defendant Boggs, as it relates to the within Complaint and upon information and belief, is in the business of milling and resurfacing.

6. Defendant York, as it relates to the within Complaint and upon information and belief, is in the business of maintaining road, water and sewer systems within York

1



ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

County, South Carolina.

7.    Defendant York, at all pertinent times herein, had control over any and all work done on West Cheval Street.

8.    Defendant Boggs, through its agents, servants, and/or employees, milled and resurfaced the road and sewer system on West Cheval Street, Fort Mill, South Carolina in 2014 at all pertinent times herein.

9.    Defendant York hired Defendant Boggs to resurface the road and sewer system on West Cheval Street, Fort Mill, South Carolina in 2014.

10.   Defendant York supervised and/or was responsible for supervision of Defendant Boggs' resurfacing of the road and sewer system on West Cheval Street, Fort Mill, South Carolina, in 2014 at all pertinent times herein.

11.   That on or around December 11, 2014, due to the actions and/or inactions of Defendant(s), water began to backup into the Plaintiffs' home located at 747 West Cheval Street, Fort Mill, South Carolina, causing extensive damage.

## FOR A FIRST CAUSE OF ACTION
### (Negligence of Defendant Boggs)

12.   Each and every allegation herein is repeated as if verbatim.

13.   Defendant Boggs, through its agents, servants and/or employees, failed to properly mill and resurface West Cheval Street, causing blockage near the Plaintiffs' home and further causing water and other substances to back up into Plaintiffs' home, causing damages.

14.   Defendant Boggs owed a duty to Plaintiffs to mill and resurface West Cheval Street

2

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

in a careful, diligent, and workmanlike manner.

15.    Defendant Boggs, acting individually and/or through its agents, servants, and/or employees in their normal scope of employment, breached said duty when West Cheval Street was not properly milled and resurfaced.

16.    Defendant Boggs is responsible for the acts of its agents, servants, and/or employees in their normal scope of employment through the doctrine of *respondeat superior*.

17.    Plaintiffs' damages directly and proximately resulted from negligence, carelessness, and recklessness of Defendant.

## FOR A SECOND CAUSE OF ACTION
### (Negligence of Defendant York)

18.    Each and every allegation herein is repeated as if verbatim.

19.    Defendant York, through its agents, servants and/or employees, failed to properly supervise Boggs' work on West Cheval Street.

20.    Defendant York owed a duty to Plaintiffs to ensure that West Cheval Street was milled and resurfaced in a careful, diligent, and workmanlike manner.

21.    Defendant York, acting individually and/or through its agents, servants, and/or employees in their normal scope of employment, breached said duty when West Cheval Street was not properly milled and resurfaced, causing blockage near the Plaintiffs' home and further causing water and other substances to back up into Plaintiffs' home, causing damages.

22.    That as citizens of York County, the Plaintiffs relied on Defendant York to have West Cheval Street milled and resurfaced in a careful, diligent, and workmanlike manner.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

23. Defendant York is responsible for the acts of its agents, servants, and/or employees in their normal scope of employment through the doctrine of *respondeat superior*.

24. Plaintiffs' damages directly and proximately resulted from negligence, carelessness, and recklessness of Defendant.

### FOR A THIRD CAUSE OF ACTION
**(Trespass against all Defendant(s))**

25. Each and every allegation herein is repeated as if verbatim.

26. Defendant(s) have engaged in conduct that interferes with Plaintiffs' right to the exclusive, peaceable possession of their real property beginning in or around December 11, 2014 and continuing to the present.

27. Plaintiffs are, and have been since on or about June 19, 2007 in legal, exclusive possession of the real property located at 747 West Cheval Street, and same is titled in the name of certain Plaintiffs.

28. Defendant(s) failed to properly mill and resurface, and/or supervise the milling and resurfacing of West Cheval Street, causing blockage near the Plaintiffs' home and further causing water and other substances to back up into Plaintiffs' home, causing damages.

29. Defendant(s) caused water and other substances to back up on Plaintiffs' real property without Plaintiffs' permission.

30. Defendant(s)'s conduct deprives Plaintiffs from the exclusive, peaceable possession, rights and use of their real property including, inter alia, but not limited to: failing to properly mill and resurface, and/or failing to supervise the milling and resurfacing of West Cheval Street, causing blockage near the Plaintiffs' home and further causing

4

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

water and other substances to back up into Plaintiffs' home, causing damages.

31.     Because of, resulting therefrom, and as a proximate and/or direct result of Defendant(s)'s actions as outlined above, Plaintiffs have and will suffer pecuniary loss (past and future) for which Plaintiffs seek actual and punitive damages.

## FOR A FOURTH CAUSE OF ACTION
### (Nuisance against all Defendant(s))

32.     Each and every allegation herein is repeated as if verbatim.

33.     Defendant(s) have engaged in conduct that interferes with Plaintiffs' right to the exclusive, peaceable possession, use and enjoyment of their real property beginning in or around November or December of 2014 and continuing to the present.

34.     Plaintiffs allege that Defendant(s) have engaged in conduct constituting an unreasonable, unwarrantable and/or unlawful use of Defendant(s)'s property causing a substantial, recurring private nuisance that proximately caused, and continues to proximately cause, harm to Plaintiffs.

35.     Defendant(s)'s conduct unreasonably interferes with and deprives Plaintiffs of the enjoyment of their rights and use of their real property. Plaintiffs would show:

   a.   The interference is substantial;

   b.   An ordinary person would be upset by the interference;

   c.   The nature and social value of the activity causing the nuisance is *de minimis*;

   d.   The manner of conducting the activity causing the nuisance was and is unreasonable;

   e.   The interference is caused because the activity causing the nuisance is

inappropriate in the location in which it is involved; and

f.    Defendant(s) acted intentionally and/or recklessly in creating the nuisance.

36.    Further, Defendant(s)'s conduct creates discomfort, annoyance and injury in that, including, but not limited to:

a.    Creating conditions that are both harmful and dangerous to Plaintiffs.

b.    Creating conditions that are both harmful and dangerous to Plaintiffs' minor children's physical and mental health.

37.    Because of, resulting therefrom, and as a proximate and/or direct result of Defendant(s)'s actions as outlined above, Plaintiffs have and will suffer pecuniary loss (past and future) for which Plaintiffs seek actual and punitive damages.

WHEREFORE, Plaintiffs pray for judgment against the Defendants in a sum sufficient to adequately compensate them for their actual damages and consequential damages, the costs of this action, and for such other and further relief as this Court may deem proper.

**[SIGNATURES ON FOLLOWING PAGE]**

6

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

Truslow & Truslow Law Firm

NEAL D. TRUSLOW
DOUGLAS N. TRUSLOW
Attorneys for Petitioner/Plaintiff
P.O. Box 1465
Columbia, SC 29202
(803) 256-6276
Fax (803) 256-7659
douglastruslow@truslowlaw.com
nealtruslow@truslowlaw.com

McDONALD, McKENZIE, RUBIN,
MILLER AND LYBRAND, L.L.P.

AMANDA PITTMAN
ATTORNEY FOR THE PLAINTIFFS
1704 Main Street
Post Office Box 58
Columbia, South Carolina 29202
(803) 252-0500

October 26, 2015

Columbia, South Carolina

9

STATE OF SOUTH CAROLINA    )

COUNTY OF YORK    )    IN THE COURT OF COMMON PLEAS
)
)
Tom Perry and Donna Perry,  )
)    CIVIL ACTION COVERSHEET
Plaintiff(s)  )
)    2015-CP - 46 - 2806
)
vs.    )
)
)
York County and Boggs Paving, Inc.,  )
)
Defendant(s)  )

Submitted By: Daniel D'Agostino    SC Bar #:    65088
Address: 25 W. Liberty St., York, SC 29745    Telephone #:    803-628-6509
Fax #:    803-628-7990
Other:
E-mail:

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
### *If Action is Judgment/Settlement do not complete*

☒ JURY TRIAL demanded in complaint.    ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

**Contracts**
☐ Constructions (100)
☐ Debt Collection (110)
☐ Employment (120)
☐ General (130)
☐ Breach of Contract (140)
☐ Other (199)

**Torts - Professional Malpractice**
☐ Dental Malpractice (200)
☐ Legal Malpractice (210)
☐ Medical Malpractice (220)
Previous Notice of Intent Case #
20____-NI-____
☐ Notice/ File Med Mal (230)
☐ Other (299)

**Torts – Personal Injury**
☐ Assault/Slander/Libel (300)
☐ Conversion (310)
☐ Motor Vehicle Accident (320)
☐ Premises Liability (330)
☐ Products Liability (340)
☐ Personal Injury (350)
☐ Wrongful Death (360)
☐ Other (399)

**Real Property**
☐ Claim & Delivery (400)
☐ Condemnation (410)
☐ Foreclosure (420)
☐ Mechanic's Lien (430)
☐ Partition (440)
☐ Possession (450)
☐ Building Code Violation (460)
☒ Other (499) DAMAGE

**Inmate Petitions**
☐ PCR (500)
☐ Mandamus (520)
☐ Habeas Corpus (530)
☐ Other (599)

**Administrative Law/Relief**
☐ Reinstate Drv. License (800)
☐ Judicial Review (810)
☐ Relief (820)
☐ Permanent Injunction (830)
☐ Forfeiture-Petition (840)
☐ Forfeiture—Consent Order (850)
☐ Other (895)

**Judgments/Settlements**
☐ Death Settlement (700)
☐ Foreign Judgment (710)
☐ Magistrate's Judgment (720)
☐ Minor Settlement (730)
☐ Transcript Judgment (740)
☐ Lis Pendens (750)
☐ Transfer of Structured Settlement Payment Rights Application (760)
☐ Confession of Judgment (770)
☐ Petition for Workers Compensation Settlement Approval (780)
☐ Other (799)

**Appeals**
☐ Arbitration (900)
☐ Magistrate-Civil (910)
☐ Magistrate-Criminal (920)
☐ Municipal (930)
☐ Probate Court (940)
☐ SCDOT (950)
☐ Worker's Comp (960)
☐ Zoning Board (970)
☐ Public Service Comm. (990)
☐ Employment Security Comm (991)

**Special/Complex /Other**
☐ Environmental (600)
☐ Automobile Arb. (610)
☐ Medical (620)
☐ Other (699)
☐ Pharmaceuticals (630)
☐ Unfair Trade Practices (640)
☐ Out-of-State Depositions (650)
☐ Motion to Quash Subpoena in an Out-of-County Action (660)
☐ Sexual Predator (510)
☐ Other (999)

Submitting Party Signature: _____    Date:  9/15/2015

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

## FOR MANDATED ADR COUNTIES ONLY

Aiken, Allendale, Anderson, Bamberg, Barnwell, Beaufort, Berkeley, Calhoun, Charleston, Cherokee, Clarendon, Colleton, Darlington, Dorchester, Florence, Georgetown, Greenville, Hampton, Horry, Jasper, Kershaw, Lee, Lexington, Marion, Oconee, Orangeburg, Pickens, Richland, Spartanburg, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

You are required to take the following action(s):

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

Please Note:     You must comply with the Supreme Court Rules regarding ADR.
                 Failure to do so may affect your case or may result in sanctions.

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

STATE OF SOUTH CAROLINA )        IN THE COURT OF COMMON PLEAS
                         )        SIXTEENTH JUDICIAL CIRCUIT
COUNTY OF YORK           )
                         )
Tom Petty and Donna Petty, )      C.A. No.:  2015-CP-46- 2806
                         )
        Plaintiffs,      )
                         )
vs.                      )
                         )        SUMMONS
York County and Boggs Paving, Inc., )
                         )
        Defendants.      )
_____)

**TO THE DEFENDANTS ABOVE NAMED:**

    **YOU ARE HEREBY SUMMONED AND REQUIRED** to answer the Summons and Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your answer to the said Complaint on the subscriber at his office at 25 West Liberty Street, York, South Carolina 29745, within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

                                        D'AGOSTINO LAW FIRM

York, South Carolina
September 15, 2015                       Daniel D. D'Agostino
                                        25 W. Liberty Street
                                        York, SC 29745
                                        (803) 628-6509
                                        (803) 628-7990 – facsimile

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF YORK ) SIXTEENTH JUDICIAL CIRCUIT

Tom Perry and Donna Perry, )

    Plaintiffs, ) COMPLAINT

v. )

     ) CA No. 2015-CP-46- 2806

York County and Boggs Paving, Inc., )

    Defendants, )

The above named Plaintiffs, complaining of the above named Defendants would allege and show unto the court as follows:

1.    The Plaintiffs are citizens and residents of York County, State of South Carolina.

2.    The Plaintiff's own property at 751 W. Cheval Drive, Fort Mill, SC 29708 which is located in York County, South Carolina.

3.    The Defendant Boggs Paving, Inc. is a contractor who at all times referenced herein was doing business in York County, South Carolina under a contract with York County, South Carolina for road improvements.

4.    The Defendant York County is a body politic which owns and maintains roads in York County including the street Plaintiffs live on, W. Cheval Drive, Fort Mill, SC 29708.

5.    The County of York also maintains and controls the sewer system for York County, South Carolina and the sewer lines which service the Plaintiffs' property.

6.    The Defendants Boggs Paving, Inc. and the County of York entered a contract wherein Boggs Paving, Inc. was providing improvements to the street on which the Plaintiffs resided; such improvements included milling and paving of the street.

1

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

7.    The Defendants, jointly and severely, had complete control of the maintenance and repairs of the street.

8.    On or about December 11, 2014, the Plaintiffs' home became flooded with various liquids as a result of and directly related to the actions and inactions of both Defendants.

## FOR A FIRST CAUSE OF ACTION

9.    All allegations set forth above not inconsistent herein are incorporated herein by reference as though copied verbatim.

10.    The Defendants, both of them, had a duty to ensure that the maintenance and repairs to the streets were performed with reasonable care and so as to not cause injury or damage to property.

11.    The Defendants, both of them, breached their duty in that through improper maintenance as well as improper repairs to the roads and damage the sewer systems and manholes, the sewer lines were blocked. The blockage resulted from various pieces of asphalt becoming lodged in the sewer lines, blocking the sewer lines and causing flooding to the Plaintiffs' residence.

12.    As a direct and proximate result of the breach of Defendants' duties, the Plaintiffs were injured in that their home has been substantially damaged, they have lost the use of their home, and the home has been devalued due to the damage. All damages were directly and proximately caused by the defective and negligent work the Defendants performed or failed to perform.

13.    The Plaintiffs have been damaged in excess of $50,000.00 actual damages plus the loss of use of their home and the diminution in value of their home, damage to

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

personal property, and Plaintiffs request a judgment in excess of $50,000.00 against the Defendants.

14.    That the Defendant Boggs was grossly negligent in that it was careless, willful, and wanton in failing to supervise its employees and take precautions as to not damage manholes and to guard against debris being dropped in manholes during repair projects. Boggs is liable for punitive damages to the Plaintiffs and Plaintiffs request punitive damages as to Boggs for its grossly negligent, willful, wanton and careless conduct.

## FOR A SECOND CAUSE OF ACTION

15.    All allegations set forth above not inconsistent herein are incorporated herein by reference as though copied verbatim.

16.    In the event the court determines that the defendants are not jointly and severally liable, then Plaintiffs submit that the Defendant Boggs was solely liable for the debris being deposited and cast into the sewer lines causing a stoppage of the fluids flowing through the sewer lines.

17.    The Defendant Boggs had a duty to ensure that during the process of milling and repaving the streets, that it protected and safeguarded the manhole and manhole covers and surrounding land.

18.    The Defendant was willful, wanton, careless and grossly negligent in failing to not only protect and safeguard the manholes but in also failing to discover the damage it had caused to the manhole resulting in debris clogging the sewer lines.

19.    As a direct and proximate result of the debris clogging the sewer lines, which included chunks of asphalt, significant amounts of fluid flooded and damaged the Plaintiffs' home.

3

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

20.    The Plaintiffs have been damaged in that portions of their home have been totally destroyed due to waters and other materials flooding their home, have lost the use of their home, have lost personal property, and have had to spend substantial sums of money towards securing, safeguarding, and repairing their home.

21.    The Defendant Boggs is liable to the Plaintiffs for its gross negligence, careless, willful and wanton conduct and Plaintiffs request a judgment in actual and punitive damages against Defendant Boggs.

## FOR A THIRD CAUSE OF ACTION

22.    All allegations set forth above not inconsistent herein are incorporated herein by reference as though copied verbatim.

23.    The County of York controls and maintains not only the sewer line but the manholes and covers for the manholes and surrounding land on the manholes.

24.    The County has a duty to properly maintain the sewer lines.

25.    Upon information and belief and as a result of inspections and reports performed by Defendant Boggs, the Defendant County of York apparently did not properly maintain the sewer lines, manholes, and surrounding property.

27.    As a direct and proximate result, debris from the opening at the manhole fell into the manhole and sewer lines, causing a stoppage which resulted in the Plaintiffs' property being flooded.

28.    The Plaintiffs have been damaged in that portions of their home have been totally destroyed due to waters and other materials flooding their home, have lost the use of their home, have lost personal property, and have had to spend substantial sums of money towards securing, safeguarding, and repairing their home.

4

Wherefore, having fully pled, Plaintiffs request a judgment against the Defendants jointly and severely or in the alternative against each defendant for their actual damages and the costs of this action and as to Boggs, Plaintiffs request punitive damages.

Respectfully submitted.

D'AGOSTINO LAW FIRM

York, South Carolina

September 3, 2015

Daniel D. D'Agostino
25 W. Liberty Street
York, SC 29745
(803) 628-6509
(803) 628-7990 – facsimile

ELECTRONICALLY FILED - 2018 Dec 28 9:36 AM - YORK - COMMON PLEAS - CASE#2018CP4603937



# South Carolina
# Department of Insurance

**HENRY McMASTER**
Governor

**RAYMOND G. FARMER**
Director

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

---

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

December 31, 2018



RECEIVED
JAN - 2 2018

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
LIBERTY MUTUAL FIRE INS CO
c/o Corporation Service Company
1703 Laurel Street
Columbia, SC 29201-0000

Dear Sir:

On December 28, 2018, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. The claimant, within this service letter, provided the following additional information regarding this first party claim: POLICY/CLAIM NUMBER TB2-Z51-283815-014. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to sdubois@doi.sc.gov.** When replying, please refer to File Number 173181, <u>Boggs Paving, Inc. v. LIBERTY MUTUAL FIRE INS CO</u>, 2018-CP-46-03937.

By:

*D. E Belton*

David E. Belton
Senior Associate General Counsel
(803)737-6132

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Henry P. Wall
       Post Office Box 61110
       Columbia, SC    29260-1110

ELECTRONICALLY FILED - 2019 Jan 07 10:59 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

# Certificate of Electronic Notification

| Recipients |
| --- |
| **Henry Wall**  - Notification transmitted on 01-07-2019 10:59:52 AM. |

ELECTRONICALLY FILED - 2019 Jan 07 11:05 AM - YORK - COMMON PLEAS - CASE#2018CP4603937

****** IMPORTANT NOTICE - READ THIS INFORMATION *****

NOTICE OF ELECTRONIC FILING [NEF]

–

**A filing has been submitted to the court RE:** 2018CP4603937

**Official File Stamp:**             01-07-2019 10:59:36 AM

**Court:**                           CIRCUIT COURT

                                     Common Pleas

                                     York

**Case Caption:**                    Boggs Paving, Inc. VS Liberty Mutual Fire
                                     Insurance Company

**Document(s) Submitted:**           Service/Acceptance Of Service

**Filed by or on behalf of:**        Henry Pickett Wall

This notice was automatically generated by the Court's auto-notification system.

–

**The following people were served electronically:**

                                     Henry Pickett Wall for Boggs Paving, Inc.

**The following people have not been served electronically by the Court. Therefore, they must
be served by traditional means:**

                                     Liberty Mutual Fire Insurance Company

ELECTRONICALLY FILED - 2019 Jan 07 11:05 AM - YORK - COMMON PLEAS - CASE#2018CP4603937